UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JEFF SLOAN,

        Plaintiff,

   v.

CHICO UNIFIED SCHOOL DISTRICT, RICK ANDERSON, RICK REES, ANTHONY WATTS, STEVE O'BRYAN, SCOTT BROWN, and CHET FRANCISCO,

        Defendants.

NO. CIV. S-06-468 WBS GGH

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

----oo0oo----

        Through his first amended complaint ("FAC"), plaintiff Jeff Sloan seeks reinstatement and money damages for an alleged smear campaign that resulted in the loss of his position as a public middle school principal. Defendants Chico Unified School District ("CUSD"), Rick Anderson, Rick Rees, Anthony Watts, Steve O'Bryan, and Scott Brown move to dismiss plaintiff's complaint, pursuant to Rule 12(b)(6), for failure to state a claim upon which this federal court can grant relief.

///

1

I.   Factual and Procedural Background

   From 1990 until 2004, plaintiff served defendant CUSD as a middle school principal. (FAC ¶ 6.) He "routinely received outstanding performance evaluations" and was entrusted in 1999 with responsibility for opening a new campus. (Id.) However, on March 9, 2004, without warning, plaintiff was informed that at a closed trustees' meeting on March 3rd, the Board had decided to provide him with a preliminary administrative lay-off notice. (Id. ¶¶ 7-8.) Thereafter, plaintiff learned from members of the public that this decision was motivated by suspicions that he had misappropriated public funds. (Id. ¶ 10.)

   On March 16, 2004, defendant Brown presented plaintiff with a letter, and supporting materials, alleging that he had misused district, school, and student body funds. (Id. ¶ 12.) The letter was placed in plaintiff's personnel file and plaintiff was given ten days to file a written response. (Id.)

   When plaintiff did respond, the Human Resources ("HR") department replied with additional findings and documentation in support of the misappropriation charges and again gave plaintiff ten days to respond to this additional information. (Id. ¶ 14.) Soon thereafter, on April 23, 2004, HR made further allegations against plaintiff, accusing him of having sexually explicit photographs on the CUSD computer assigned to him. (Id. ¶ 15.) Plaintiff maintains that these allegedly false charges against him were malicious, stigmatizing, and designed to compel him to resign. (Id. ¶¶ 16, 20.)

   Because, according to plaintiff, defendants had already notified the media and the public about the charges against him,

plaintiff opted to have a public hearing on the charges on May 5, 2004. (Id. ¶¶ 13, 17-18.)  Despite evidence that "clearly demonstrated that defendant Brown's charges were false and pretext," the Board elected at that time to reassign plaintiff to another position. (Id. ¶ 18.)  On June 18, 2004, plaintiff was informed that he would spend the 2004-05 school year as the secondary assistant principal at a CUSD high school. (Id. ¶ 22.) The following year, he was removed from that position and assigned to an elementary school teaching job. (Id. ¶ 23.)

Plaintiff alleges that he was essentially demoted in retaliation for publicly defending himself against defendants' charges, openly criticizing Brown, and exposing district mismanagement. (Id. ¶ 21.)  He further claims that defendants' actions overall "resulted in substantial economic loss in the form of reduced salary and benefits" and damaged his career. (Id. ¶ 23.)  As a result, plaintiff believes that his ability to pursue other employment opportunities has been severely impaired. (Id. ¶ 20.)  He thus seeks "prospective injunctive relief", specifically reinstatement to his position as principal of Marsh Junior High School, and compensatory and punitive damages. (Id. ¶¶ 26-28 & p.10.)

II. Discussion

Defendants initially moved to dismiss plaintiff's complaint, consisting of five causes of action, on March 31, 2006.  Because defendants had not yet filed an answer, plaintiff filed in response a first amended complaint as of right.  Fed. R. Civ. P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is

3

served . . . ."); <u>Shaver v. Operating Eng'rs Local 428 Pension Trust Fund</u>, 332 F.3d 1198, 1201 (9th Cir. 2003) ("[A] motion to dismiss [is] not a responsive pleading within the meaning of Fed. R. Civ. P. 15(a)."). These amendments significantly streamlined plaintiff's allegations, reduced his claims from five to two, and added Chet Francisco as a defendant. Additionally, pursuant to Federal Rule of Civil Procedure 41(a)(1)(i), plaintiff also noticed a voluntary dismissal of defendant CUSD on April 12, 2006. In light of these changes, several, but not all, of defendants' grounds for their motion to dismiss are moot and the court need only consider defendants' arguments relating to claims one and three in the original complaint (now claims one and two).[1]

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable

---

[1] When a plaintiff files an amended complaint as of right pursuant to Rule 15(a), "[t]he amended complaint supersedes the original, the latter being treated thereafter as non-existent." <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). Such filings typically moot all pending motions, however "the [c]ourt may exercise its discretion to consider a motion to dismiss the original complaint where the amended complaint fails to cure the defects of the original complaint." <u>Fitzgerald v. State</u>, No. Civ. 96-2077, 1997 WL 579193, at *3 (D. Ariz. July 9, 1997); see also <u>Datastorm Techs., Inc. v. Excalibur Commc'ns, Inc.</u>, 888 F. Supp. 112, 114 (N.D. Cal. 1995); <u>Roessert v. Health Net</u>, 929 F. Supp. 343, 347 (N.D. Cal. 1996). Here, because the amended complaint largely preserved claims one and three, defendants' objections are still relevant and require the court's consideration.

However, defendants' objections to plaintiff's discussion of the Brown Act, Cal. Gov. Code §§ 54950-54963, in the FAC are not still at issue, contrary to defendants' arguments in their reply. Defendants originally argued only that "<u>to the extent that</u> [the Brown Act] paragraphs seek a remedy, they should be stricken." (Defs.' Mot. to Dismiss 10.) As evident from the complaint and noted by plaintiff in his opposition, he is not seeking a remedy for Brown Act violations. Thus there is no need for the court to consider defendants' motion to strike.

inferences in favor of the pleader. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Cruz v. Beto</u>, 405 U.S. 319 (1972).  The court may not dismiss for failure to state a claim "unless it appears beyond doubt that plaintiff can prove <u>no</u> set of facts in support of his claim which would entitle him to relief." <u>Van Buskirk v. CNN, Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002) (emphasis added); <u>see also</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

        Plaintiff's first cause of action, in both his original complaint and the FAC, alleges a violation of his Fourteenth Amendment right to due process, actionable under 42 U.S.C. § 1983.  (FAC ¶¶ 25-26.)  "The Fourteenth Amendment protects against the deprivation of property <u>or</u> liberty without procedural due process;" however, plaintiff clarified in his FAC that he is asserting only a deprivation of liberty without due process. <u>Brady v. Gebbie</u>, 859 F.2d 1543, 1547 (9th Cir. 1988) (emphasis added).  This change rendered moot many of the arguments made by defendants in support of their motion to dismiss this claim, as they primarily focused on the fact that in California, a public school administrator apparently is without tenure rights and consequently has no protected property interest in continued employment in an administrative capacity.  <u>See</u> <u>Grant v. Adams</u>, 69 Cal. App. 3d 127, 133 (1977).

        Plaintiff's liberty interest is distinct from his property interest and "is implicated in the employment termination context if the charge [on which his demotion or dismissal is based] impairs a reputation for honesty or morality."  <u>Matthews v. Harney County, Or., Sch. Dist. No. 4</u>, 819 F.2d 889, 891 (9th Cir. 1987); <u>see also</u> <u>Hayes v. Phoenix-Talent</u>

1  Sch. Dist. No. 4, 893 F.2d 235, 237 (9th Cir. 1990) (holding that
2  "publicized charges of moral turpitude or dishonesty" implicate a
3  liberty interest because such circumstances are stigmatizing and
4  "might foreclose other employment opportunities"); Brady, 859
5  F.2d at 1553 (noting that "failure to prevail on a property claim
6  will not preclude a properly asserted liberty claim").  Plaintiff
7  is entitled to procedural due process protections if "(1) the
8  accuracy of the charge is contested; (2) there is some public
9  disclosure of the charge; and (3) the charge is made in
10 connection with termination of employment."  Matthews, 819 F.2d
11 at 891-92; see also Brady, 859 F.2d at 1553 ("[A] nontenured
12 government employee has a liberty interest and is entitled to a
13 name-clearing hearing 'if the employer creates and disseminates a
14 false and defamatory impression about the employee in connection
15 with his termination.'" (quoting Codd v. Velger, 429 U.S. 624,
16 628 (1977))).

17         Here, the charges against plaintiff included
18 allegations that he misappropriated public funds and that he
19 maintained pornographic images on his employer's computer.  Both
20 accusations easily satisfy the requirement that "the charge
21 impair[] a reputation for honesty or morality."  Matthews, 819
22 F.2d at 891.  Further, plaintiff disputed these charges in
23 writing and at a public hearing.  (FAC ¶¶ 14, 17.)  He also
24 alleges that defendant Brown "intentionally leaked the charges
25 against plaintiff to the media" before plaintiff himself was even
26 aware of the grounds for his removal.  (Id. ¶ 13.)  Thus,
27 plaintiff appears to have been entitled to some procedural
28

6

protections prior to his removal from his principal position.[2]

However, questions remain as to the form of the process required. In general, plaintiff is entitled to "an opportunity to refute the charge" and clear his name. Bd. of Regents v. Roth, 408 U.S. 564, 573 & n.12 (1972). More specifically, this opportunity must be one that allows plaintiff to be heard "at a meaningful time and in a meaningful manner." Brady, 859 F.2d at 1554 (holding that the opportunity was not meaningful when the evidence suggested that the employer had already made up her mind before hearing out the terminated employee and the employer failed to provide the employee with sufficient time to prepare his presentation). The actual procedures required must be determined on a case-by-case basis through an analysis that "balances 1) the private interest that will be affected, 2) the risk of an erroneous deprivation of that interest through the procedures used, and 3) the additional cost and administrative burdens that additional procedures would entail." Id. (citing Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976)).

Plaintiff's own pleadings reveal that, both before and

---

[2] In Grant v. Adams, a California appellate court held that the plaintiff, a former school principal, failed to show that he had been stigmatized severely enough to implicate his liberty interest because he retained a position as a tenured teacher. 69 Cal. App. 3d at 136. However, Grant is distinguishable because the plaintiff in that case filed suit based on his suspicions that the reason proffered for his termination was inaccurate. In contrast, charges of financial mismanagement and possession of pornography, which are at issue in this case, actually impugn plaintiff's reputation in the community and, relatedly, his liberty interests. See Roth, 408 U.S. at 573 (observing that liberty interest are at stake when the State makes a charge against an individual "that might seriously damage his standing and associations in his community").

7

during an open hearing on May 5, 2004, he and others were permitted to present the Board with evidence of his innocence. (FAC ¶ 18.)  Nevertheless, he also claims that he "was not given an opportunity to be heard regarding the actual reasons for his removal." (Id. ¶ 20.)  From this, at this early stage in the proceedings and in the absence of any evidence, the court must infer that although plaintiff was given an opportunity to present his case, the opportunity, for whatever reason, was not meaningful.  As the Ninth Circuit explained in Ortez v. Washington County, "[w]hile further discovery may reveal that, when considered in their totality, the procedures available to him did provide him with ample opportunity to be heard and confront the evidence against him, his complaint sets forth allegations that, if proven, would entitle him to relief."  88 F.3d 804, 810 (9th Cir. 1996).  Dismissal of plaintiff's § 1983 claim based on alleged due process violations is therefore not warranted.

        Plaintiff's second cause of action, which was claim three in his original complaint, alleges a violation of his First Amendment right to speak freely without fear of retaliation by his employer, also actionable under 42 U.S.C. § 1983.  (FAC ¶¶ 27-28.)  Defendants challenge this claim, as well as plaintiff's due process claim, based on the remedy sought:[3] injunctive relief in the form of reinstatement which, although carried out by individual state actors subject to this lawsuit, will in fact

---

[3] Defendants do not argue that plaintiff has failed to state a § 1983 claim for violation of his First Amendment rights. They only contend that the relief sought cannot be awarded by the court against the named defendants.

8

impact the public treasury and interfere with the public administration. (Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss 5 ("If the individual Defendants are ordered by the Court to reinstate Plaintiff as Principal of Marsh Junior High, then Defendant School District [a state entity in California] becomes obligated to pay his higher salary and is obligated to retain him in that position.").)

Although the Eleventh Amendment generally bars suits against the state and its agents in their official capacity, "a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity." Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997); see also Ex parte Young, 209 U.S. 123 (1908).[4] Significantly, the Ninth Circuit has held that "job reinstatement constitutes prospective injunctive relief" because it "compel[s] the state official to cease her actions in violation of federal law and to comply with constitutional requirements." Lawrence Livermore, 131 F.3d at 841 (quoting Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir. 1986)). Moreover, despite the salary that

---

[4] Defendants attempt to distinguish Lawrence Livermore by arguing that because relief cannot be realized through the acts of one Board member and rather must be achieved by the Board acting as a whole, the relief sought is "necessarily . . . against the School District itself." (Defs.' Reply 3.) They argue that awarding such relief "would violate the Eleventh Amendment and is impermissible." (Id.) However, the Eleventh Amendment does not bar suits for prospective injunctive relief against state officers acting in their official capacities, even if such suits are, at their core, suits against the state itself. Dawavendewa v. Salt River Project Agric. Improvement & Power Dist., 276 F.3d 1150, 1159 n.10 (9th Cir. 2002) (recognizing that Ex parte Young "created an oft-recognized legal fiction that injunctive relief against state officials acting in their official capacity does not run against the State").

9

1  must be paid upon reinstatement, the Ninth Circuit has also noted
2  that this draw on state funds is not equivalent to an
3  impermissible award of damages because the salary paid will be
4  for work actually performed, not to compensate the plaintiff for
5  lost wages.  Id.  Cf. Regents of the Univ. of Cal. v. Doe, 519
6  U.S. 425, 429  (1997) ("[W]hen the action is in essence one for
7  the recovery of money from the state, the state is the real,
8  substantial party in interest and is entitled to invoke its
9  sovereign immunity from suit even though individual officials are
10 nominal defendants." (quoting Ford Motor Co. v. Dep't of Treasury
11 of Ind., 323 U.S. 459, 464 (1945))).  Consequently, plaintiff's
12 claim for prospective injunctive relief against the Board is
13 cognizable.[5]

14          IT IS THEREFORE ORDERED that defendants' motion to
15 dismiss be, and the same hereby is, DENIED.
16 DATED:  May 4, 2006

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[5] This is true even though "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge'" and not reinstatement.  The Ninth Circuit has recognized relief might not be limited to provision of the appropriate process when due process claims are intertwined with another substantive right.  Brady, 859 F.2d at 1552; see also Codd v. Velger, 429 U.S. 624, 627 (1977).  Consequently, because plaintiff has alleged that his demotion violated his Fourteenth Amendment Due Process and First Amendment Free Speech rights, he has sufficiently alleged a claim for reinstatement.

10